## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARTHA TOWNER, individually, and on behalf of all others similarly situated,

              Plaintiff,

v.

1st MIDAMERICA CREDIT UNION, and DOES 1-100,

              Defendant.

**Civil No.:  3:15-cv-01162**

Hon. Nancy J. Rosenstengel

## 1st MIDAMERICA CREDIT UNION'S ANSWER AND DEFENSES TO COMPLAINT

Defendant 1st MidAmerica Credit Union ("MidAmerica"), through counsel, answers the complaint filed by Plaintiff Martha Towner ("Plaintiff") as follows:

## NATURE OF THE ACTION

## COMPLAINT NO. 1

This is a class and representative action brought by Plaintiff to assert claims in her own right, and in her capacity as the class representative of all others similarly situated. This class action seeks monetary damages, restitution, punitive damages, and injunctive relief against Defendant 1st MidAmerica arising from its breach of its contracts with consumers in its implementation of an overdraft fee program. Specifically, Plaintiff asserts that 1st MidAmerica charged overdraft fees for transactions for which there was money in the checking account to cover the transactions, thereby breaching the express terms of its consumer contracts, including the Opt-in Agreement. Plaintiff also alleges that because it provided inaccurate and misleading overdraft information to its customers, under the Electronic Funds Transfer Act, 12 C.F.R. § 1005, 1st MidAmerica was not authorized to assess overdraft fees to consumers for debit card and non-recurring debit card charges. However, 1st MidAmerica did charge its customers overdraft fees for ATM and debit card transactions in violation of 12 C.F.R. § 1005.

## ANSWER NO. 1

In answering paragraph 1, MidAmerica admits that Plaintiff purports to bring this action as a class and representative action and that she purports to allege claims in her own right and as

a class representative of others similarly situated. MidAmerica admits that Plaintiff's Complaint prays for monetary damages, restitution, punitive damages, and injunctive relief. MidAmerica admits some customers have been charged overdraft fees in connection with ATM and debit card charges. MidAmerica denies the remaining allegations in paragraph 1.

## PARTIES

## COMPLAINT NO. 2

Plaintiff is a resident of Johnson County, Kansas, and was a member of 1st MidAmerica at all times relevant to the class action allegations.

## ANSWER NO. 2

MidAmerica lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2 and on that basis denies.

## COMPLAINT NO. 3

Based on information and belief, Defendant 1st MidAmerica is a state chartered credit union with its headquarters located in Bethalto, Illinois. Based on information and belief, 1st MidAmerica was named Olin Community Credit Union until October 2010.

## ANSWER NO. 3

In answering paragraph 3, MidAmerica admits it is a state-chartered credit union with its main office located in Bethalto, Illinois. MidAmerica admits it changed its name from Olin Community Credit Union around October 2010.

## COMPLAINT NO. 4

Whenever in the complaint reference is made to any act, deed, or conduct of a defendant corporation, the allegation means the defendant corporation engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the defendant corporation's ordinary business and affairs. (Doe Defendants are collectively referred to herein and are included in the term "Defendant.")

115621615v1

## ANSWER NO. 4

To the extent paragraph 4 contains any factual allegations, MidAmerica lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4 and on that basis denies.

## COMPLAINT NO. 5

As to the conduct alleged herein each act was authorized, ratified, or directed by Defendant's officers, directors, or managing agents.

## ANSWER NO. 5

MidAmerica denies the allegations in paragraph 5.

## VENUE AND JURISDICTION

## COMPLAINT NO. 6

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because: 1) the claims of plaintiffs aggregated together exceed $5,000,000, and 2) some putative class members are residents of different states than the Defendant. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of and does business in Madison County, Illinois, which is in this District.

## ANSWER NO. 6

In answering paragraph 6, MidAmerica admits, based on the allegations in the Complaint, this Court has jurisdiction, that venue is proper in this District and that this District covers the County of Madison. MidAmerica denies the remaining allegations in paragraph 6.

## FACTUAL ALLEGATIONS

A.     **1st MidAmerica's Unlawful Overdraft Program**

## COMPLAINT NO. 7

1st MidAmerica is an Illinois based credit union that provides banking services in Illinois and Missouri to over 45,000 members. 1st MidAmerica has 12 branches and has over $497 million in assets. One of the services offered by 1st MidAmerica to consumer banking customers is a checking account. One of the benefits 1st MidAmerica offers with a checking account is a debit card that

can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM machines, schedule ACH (Automated Clearing House transactions) such as certain recurring payments, and other types of transaction items that debit from the checking account.  In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), 1st MidAmerica assesses overdraft fees to its customers when it determines that the customer account is overdrawn.

## ANSWER NO. 7

In answering paragraph 7, MidAmerica denies that, in connection with processing debit items, it assesses overdraft fees to all customers in all circumstances in which it determines that an account is overdrawn. MidAmerica admits the remaining allegations in paragraph 7.

## COMPLAINT NO. 8

Credit Unions, like banks, have increasingly turned to overdraft fees as a highly lucrative profit center.  An FDIC report estimated that overdraft fees represent 74% of the total services charges that are imposed on deposit accounts in the United States.  According to the June 11, 2013 report entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14).

## ANSWER NO. 8

In answering paragraph 8, MidAmerica admits that the document found at http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf   is   titled "CFPB Study of Overdraft Programs." MidAmerica denies that the aforementioned document states that credit unions generated $7.4 billion in overdraft fees in 2012. MidAmerica lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 8 and on that basis denies.

## COMPLAINT NO. 9

The high cost of an overdraft fee is usually unfairly punitive.  In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake.  (May 2012 Pew Charitable Trust report entitled

---

[1]  http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf  (last  viewed  October  12, 2015).

"Overdraft America:  Confusion and Concerns about Bank Practices", at p. 4.)
More than 60% of the transactions that resulted in a large overdraft fee were for
less than $50.  (June 2014 Pew Charitable Trust report entitled "Overdrawn", at
p.8).  More than 50% of those who were assessed overdraft fees do not recall
opting into an overdraft program (*id.*, at p. 5), and more than two-thirds of
customers would have preferred the financial institution decline their transaction
rather than paying the transaction into overdraft and charging a very large fee (*id.*,
at p. 10).

## ANSWER NO. 9

In answering paragraph 9, MidAmerica denies that overdraft fees are usually unfairly

punitive. MidAmerica lacks knowledge or information sufficient to form a belief about the truth

of the remaining allegations in paragraph 9 and on that basis denies.

## COMPLAINT NO. 10

Unfortunately, the customers who are assessed these fees are the most
vulnerable customers.  Younger, lower-income, and nonwhite account holders are
among those who were more likely to be assessed overdraft fees.  (*Id.*, at p. 1.)  A
25 year old is 133% more likely to pay an overdraft penalty fee than a 65 year old.
(*Id.*, at p. 3.)  More than 50% of the customers assessed overdraft fees earned
under $40,000 per year.  (*Id.*, at p. 4.)  Nonwhites are 83% more likely to pay an
overdraft fee than whites.  (*Id.*, at p. 3.)

## ANSWER NO. 10

MidAmerica lacks knowledge or information sufficient to form a belief about the truth of

the allegations in paragraph 10 and on that basis denies.

## COMPLAINT NO. 11

In reaction to banks and credit unions taking advantage of millions of
customers through the unfair practice of charging overdraft fees through
methodologies that maximize the possible number of expensive overdraft fees to
be charged, a substantial amount of litigation on these issues has occurred over
the past few years.  The results of this litigation include a trial verdict in
California and nationwide settlements wherein banks and credit unions have been
ordered or have agreed to pay unfairly assessed overdraft fees back to their
customers in an amount in the hundreds of millions of dollars.

### ANSWER NO. 11

MidAmerica lacks knowledge or information sufficient to form a belief about the truth of

the allegations in paragraph 11 and on that basis denies.

### COMPLAINT NO. 12

Furthermore, the federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies. In 2010, the Federal Reserve Board enacted regulation permitting financial institutions to charge overdraft fees on ATM and one-time debit card charges only if the institution first obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 ("Opt In Rule").

### ANSWER NO. 12

In answering paragraph 12, MidAmerica admits that 12 C.F.R. § 1005.17 permits

financial institutions to charge overdraft fees on ATM and one-time debit card transactions if

they obtain the consumer's affirmative consent to the institutions' payment of ATM or one-time

debit card transactions. MidAmerica denies the remaining allegations in paragraph 12.

### COMPLAINT NO. 13

To qualify as affirmative consent, the opt-in notice/agreement must include, but is not limited to, the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;

- The opt-in consent must be obtained separately from other consents and acknowledgements;

- The consent cannot serve any purpose other than opting into the overdraft program;

- The consent cannot be a pre-selected checked box;

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt-in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

## ANSWER NO. 13

The requirements for opting in to overdraft protection are stated in applicable statutes and regulations.  MidAmerica denies the allegations in paragraph 13.

## COMPLAINT NO. 14

At all relevant times, 1st MidAmerica had an overdraft program in place for assessing overdraft fees on certain transactions which is contrary to the express terms of its contracts with members; is contrary to how 1st MidAmerica represents its overdraft program to its members; and is contrary to what consumers would expect as to when they would be assessed overdraft fees.  1st MidAmerica contracts with its members that it is entitled to assess an overdraft fee when 1st MidAmerica pays an item (an item is a check, debit card withdrawal, ATM or ACH) when it is presented without sufficient funds/ money in the account to pay the item.

## ANSWER NO. 14

In answering paragraph 14, MidAmerica admits that it has overdraft practices under which overdraft fees are assessed on certain transactions.  MidAmerica denies the remaining allegations in paragraph 14.

## COMPLAINT NO. 15

1st MidAmerica's contractual promise to only assess overdraft fees when there is not enough money in the account to pay the item (insufficient funds), was also provided to customers in other disclosures and marketing materials it provided to customers.

## ANSWER NO. 15

MidAmerica denies the allegations in paragraph 15.

## COMPLAINT NO. 16

However, contrary to these agreements and other marketing materials indicating that 1st MidAmerica will only charge overdraft fees when there is not enough money in the checking account to pay the transaction, 1st MidAmerica's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account or a negative balance, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (available balance) rather than the actual balance.  The available balance is the actual balance minus anticipated debits in the future (that may or may not occur) and deposits that have not yet cleared pursuant to its funds

availability policy.  The use of an internal available balance rather than the actual balance to determine whether a transaction results in an overdraft and is subject to an overdraft fee is directly contrary to the language in the contracts.  The result is that 1st MidAmerica improperly charges members overdraft fees in situations when there is money in the account to pay the item(s).

## ANSWER NO. 16

MidAmerica denies the allegations in paragraph 16.

## COMPLAINT NO. 17

This practice is in breach of agreements with Plaintiff and the class.  The Opt-in Agreement giving 1st MidAmerica the right to charge overdraft fees on debit card and ATM transactions, states that:  "An Overdraft occurs when you do not have enough money in your account to cover a transactions, but we pay it anyway" (Plaintiff's Opt-in Agreement, Exhibit 1).  Based on information and belief, the Opt-in Agreement utilized for all the putative class members had the same or substantially similar language.  Based on information and belief, the Account Agreement also used similar language as the Opt-in Agreement (such as insufficient funds or negative balance) to describe an overdraft that would be the subject of an overdraft fee.  Further, the practice of charging overdraft fees even when there are sufficient money/funds in the account is inconsistent with how 1st MidAmerica describes the circumstances of when it assesses overdraft fees in other customer materials.  Further, 1st MidAmerica has failed to inform customers of the conditions under which overdraft fees will be assessed in its agreements and other consumer materials.

## ANSWER NO. 17

In answering paragraph 17, MidAmerica admits that the agreement attached to the Complaint as Exhibit 1 contains the language: "An Overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." MidAmerica denies the remaining allegations in paragraph 17.

## COMPLAINT NO. 18

Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts.

### ANSWER NO. 18

In answering paragraph 18, MidAmerica denies that Plaintiff performed her obligations under the terms of a contract with MidAmerica and that any of Plaintiff's obligations under a contract with MidAmerica were waived or excused. MidAmerica lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 18 and on that basis denies.

### COMPLAINT NO. 19

Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

### ANSWER NO. 19

In answering paragraph 19, MidAmerica admits that Plaintiff purports to seek relief on behalf of herself and all others similarly situated. MidAmerica denies the remaining allegations in paragraph 19.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Martha Towner**

### COMPLAINT NO. 20

Plaintiff was harmed by the practice of charging overdraft fees when there was money in the account to cover the transaction.   Plaintiff entered into agreements, including the Opt-in Agreement, with 1st MidAmerica[2], wherein 1st MidAmerica contracted to charge overdraft fees only if there was not money/ sufficient funds to cover the transaction.   1st MidAmerica breached these agreements, and in breaching the Opt-In Agreement, violated Regulation E.   It will be necessary to obtain Defendant's records to determine each occasion when 1st MidAmerica engaged in this practice, and the resulting damage to Plaintiff from the practice.   However, for example, on February 6, 2014 Plaintiff had $94.97 in her account, before a $23.52 transaction was posted to her account leaving a balance of $71.45.   Despite there being enough money in the account to cover the transaction, 1st MidAmerica assessed an overdraft fee of $29 on the transaction.   It is believed that a complete review of Plaintiff's and 1st

---

[2] Based on information and belief, 1st MidAmerica is the same credit union as Olin Community Credit Union, with the only difference being a name change.  Therefore, when 1st MidAmerica is used throughout the complaint, it refers to agreements, conduct and actions taken by 1st MidAmerica whether those actions and agreements were under the Olin Community Credit Union name or 1st MidAmerica name.

MidAmerica's records will show multiple instances of 1st MidAmerica improperly charging Plaintiff overdraft fees for transaction items despite Plaintiff having sufficient funds/money in her account to cover the transaction item(s).

### ANSWER NO. 20

In answering paragraph 20, MidAmerica admits that Plaintiff entered into an agreement with MidAmerica that provides, among other things, that MidAmerica is entitled to charge a fee when it pays an overdraft on Plaintiff's account. MidAmerica denies the remaining allegations in paragraph 20.

### COMPLAINT NO. 21

Furthermore, the assessment and unilateral taking of improper overdraft fees further reduces the balance and amount of funds in the account, resulting in and aggressively causing subsequent, otherwise non-overdrafting transactions to be improperly treated as transactions for which 1st MidAmerica assesses further overdraft fees . A complete evaluation of 1st MidAmerica's records is necessary to determine the full extent of Plaintiff's harm from this practice.

### ANSWER NO. 21

MidAmerica denies the allegations in paragraph 21.

### CLASS ACTION ALLEGATIONS

### COMPLAINT NO. 22

Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following classes.

### ANSWER NO. 22

In answering paragraph 22, MidAmerica admits that Plaintiff purports to bring this case and each of her respective causes of action as a class action. MidAmerica denies the remaining allegations in paragraph 22.

### COMPLAINT NO. 23

The "Class" is composed of two potential classes.

**The Positive Balance Class:**

**All US residents who have or have had accounts with 1st MidAmerica who incurred overdraft fees for transactions when there was money in the checking account to pay the transactions in the ten years preceding the filing of this Complaint.**

**The Regulation E Class:**

**All US residents who have or have had accounts with 1st MidAmerica who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of an opt-in agreement which provided inaccurate or misleading information on 1st MidAmerica's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transaction in the year preceding the filing of this Complaint.**

## ANSWER NO. 23

In answering paragraph 23, MidAmerica admits that the Complaint proposes two potential classes.  MidAmerica denies the remaining allegations in paragraph 23.

## COMPLAINT NO. 24

Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant, this Court and any employees assigned to work on the case, and all employees of the law firms representing Plaintiff and the Class.

## ANSWER NO. 24

In answering paragraph 24, MidAmerica admits that the Complaint purports to exclude from the proposed classes any entity in which MidAmerica has a controlling interest, officers or directors of MidAmerica, this Court and any of its employees assigned to work on this case, and all employees of the law firms representing Plaintiff. MidAmerica denies the remaining allegations in paragraph 24.

## COMPLAINT NO. 25

Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

## ANSWER NO. 25

MidAmerica denies the allegations in paragraph 25.

## COMPLAINT NO. 26

This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

## ANSWER NO. 26

In answering paragraph 26, MidAmerica admits that Plaintiff purports to bring this case on behalf of the proposed classes aforementioned in the Complaint. MidAmerica denies the remaining allegations in paragraph 26.

## COMPLAINT NO. 27

**Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is unknown to Plaintiff at this time and can be determined only by appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

## ANSWER NO. 27

MidAmerica lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27 and on that basis denies.

## COMPLAINT NO. 28

Upon information and belief, Defendant retains the databases, or other documentation, of transactions and account enrollment which will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

## ANSWER NO. 28

MidAmerica denies the allegations in paragraph 28.

115621615v1

## COMPLAINT NO. 29

**Commonality (Federal Rule of Civil Procedure 23(a)(2)** – The action involves common questions of law and fact.  Those common questions of law or fact predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

      a.     Whether Defendant had standardized Account Agreements during the class period that were provided to customers;

      b.     Whether Defendant had standardized Opt-In Agreements during the class period that was provided to customers;

      c.     Whether Defendant breached that customer agreements by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had sufficient funds/money to cover the transactions;

      d.     Whether Defendant's conduct violated Illinois Consumer Fraud and Deceptive Business Practices Act; and

      e.     Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

## ANSWER NO. 29

MidAmerica denies the allegations in paragraph 29.

## COMPLAINT NO. 30

**Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as the relevant agreements and the challenged overdraft fee practice that was applied to customers' accounts are uniform for all Class members.

## ANSWER NO. 30

MidAmerica denies the allegations in paragraph 30.

## COMPLAINT NO. 31

**Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members.  Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.   There are no material conflicts between the claims of the

representative Plaintiff and the members of the Class that would make class certification inappropriate.  Plaintiff and her counsel intend to prosecute this action vigorously.

## ANSWER NO. 31

MidAmerica lacks knowledge or information sufficient to form a belief about the truth of

the allegations in paragraph 31 and on that basis denies.

## COMPLAINT NO. 32

**Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** – The common questions of law or fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.  Further, the class action is superior to all other available methods for the fair and efficient adjudication of this case or controversy.  Because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct.  Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed.  The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.  In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

## ANSWER NO. 32

MidAmerica denies the allegations in paragraph 32.

## COMPLAINT NO. 33

Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices

may be required, Plaintiff would contemplate the use of additional media and/or mailings.

## ANSWER NO. 33

In answering paragraph 33, MidAmerica lacks sufficient knowledge or information to form a belief about the truth of what Plaintiff is contemplating. MidAmerica denies the remaining allegations in paragraph 33.

## COMPLAINT NO. 34

This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

i. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

ii. Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i. The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii. The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii. The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv. The difficulties likely to be encountered in the management of a Class Action.

## ANSWER NO. 34

MidAmerica denies the allegations in paragraph 34.

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

## COMPLAINT NO. 35

The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

## ANSWER NO. 35

MidAmerica's answers to paragraphs 1 through 34 are re-alleged and incorporated by reference.

## COMPLAINT NO. 36

Plaintiff and each of the Class members entered into contracts covering the subject of overdraft transactions, which contract was drafted by and is binding on Defendant.  In addition, certain of the Class members entered into an Opt-In Agreement with Defendant.

## ANSWER NO. 36

In answering paragraph 36, MidAmerica admits that Plaintiff and MidAmerica entered into contracts covering the subject of overdraft and that the operative versions of these contracts were drafted by and are binding on MidAmerica.

## COMPLAINT NO. 37

The contracts authorize Defendant to assess overdraft fees only for transactions for which there was not money in the account to pay the item.

16

## ANSWER NO. 37

In answering paragraph 37, MidAmerica admits it is entitled to charge fees for overdraft when there are insufficient funds available in the account to pay that transaction.

## COMPLAINT NO. 38

In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

## ANSWER NO. 38

In answering paragraph 38, MidAmerica admits that contracts generally impose upon each party to the contract a duty of good faith and fair dealing. MidAmerica denies the remaining allegations in paragraph 38.

## COMPLAINT NO. 39

The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

## ANSWER NO. 39

In answering paragraph 39, MidAmerica admits that contracts generally impose upon each party to the contract a duty of good faith and fair dealing. MidAmerica denies the remaining allegations in paragraph 39.

## COMPLAINT NO. 40

Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they

17

were prevented from performing or which were waived or excused by Defendant's misconduct.

## ANSWER NO. 40

In answering paragraph 40, MidAmerica denies that Plaintiff performed her obligations under the terms of her contracts with MidAmerica and that any of Plaintiff's obligations under her contracts with MidAmerica were waived or excused. MidAmerica lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 40 and on that basis denies.

## COMPLAINT NO. 41

Defendant breached the expressed terms of the contract by, inter alia, assessing overdraft fees when there was money in the account to pay the item.

## ANSWER NO. 41

MidAmerica denies the allegations in paragraph 41.

## COMPLAINT NO. 42

Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

## ANSWER NO. 42

MidAmerica denies the allegations in paragraph 42.

## COMPLAINT NO. 43

As a proximate result of Defendant's breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## ANSWER NO. 43

MidAmerica denies the allegations in paragraph 43.

115621615v1

## SECOND CAUSE OF ACTION

### (For Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)

## COMPLAINT NO. 44

The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

## ANSWER NO. 44

MidAmerica's answers to paragraphs 1 through 43 are re-alleged and incorporated by reference.

## COMPLAINT NO. 45

Defendant has engaged in, and continues to engage in, a general business practice whereby 1st MidAmerica charges overdraft fees for transactions for which there was money/sufficient funds in the checking account to cover the transactions, and provides misleading information or omits necessary information regarding this practice while failing to disclose the nature of the practice, to increase overdraft fees.

## ANSWER NO. 45

MidAmerica denies the allegations in paragraph 45.

## COMPLAINT NO. 46

Plaintiff and the Class relied upon Defendant's misrepresentations and omissions in deciding whether to enroll in the overdraft program.

## ANSWER NO. 46

MidAmerica denies the allegations in paragraph 46.

## COMPLAINT NO. 47

Defendant intended that Plaintiff and the Class would rely on Defendant's misrepresentations and omissions in deciding whether to enroll in the overdraft program.

## ANSWER NO. 47

MidAmerica denies the allegations in paragraph 47.

115621615v1

## COMPLAINT NO. 48

By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has violated 815 ILCS 505/2.

## ANSWER NO. 48

MidAmerica denies the allegations in paragraph 48.

## COMPLAINT NO. 49

Plaintiff and the other class members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of 815 ILCS 505/2.

## ANSWER NO. 49

MidAmerica denies the allegations in paragraph 49.

## COMPLAINT NO. 50

The above described deceptive or unfair practices offend public policy and are injurious to consumers.

## ANSWER NO. 50

MidAmerica denies the allegations in paragraph 50.

## COMPLAINT NO. 51

As a direct and proximate result of the above described deceptive and unfair practices, Plaintiff and the Class members were damaged because they received less than they bargained for, and seek relief as set forth in the Prayer below.

## ANSWER NO. 51

MidAmerica denies the allegations in paragraph 51.

## COMPLAINT NO. 52

Furthermore, Defendant's illegal and wrongful conduct, as set forth above, including Defendant's self-dealing, misrepresentations, and material omissions, was intended to benefit Defendant at the expense of the Plaintiff and the Class, constituted outrageous conduct, was perpetrated by evil motive, and with reckless indifference to the rights of the Plaintiff and the Class, justifying the imposition of punitive damages.

## ANSWER NO. 52

MidAmerica denies the allegations in paragraph 52.

## COMPLAINT NO. 53

Unless Defendant is enjoined from continuing to engage in this business practice, Plaintiff and the Class members will continue to be injured by Defendant's wrongful actions and conduct.  Therefore, Plaintiff and the Class members are entitled to injunctive relief.

## ANSWER NO. 53

MidAmerica denies the allegations in paragraph 53.

## THIRD CAUSE OF ACTION

### (For Unjust Enrichment/Restitution)

## COMPLAINT NO. 54

The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

## ANSWER NO. 54

MidAmerica's answers to paragraphs 1 through 53 are re-alleged and incorporated by reference.

## COMPLAINT NO. 55

Defendant received millions of dollars as a result of the wrongful and unjust misconduct alleged above.

## ANSWER NO. 55

MidAmerica denies the allegations in paragraph 55.

## COMPLAINT NO. 56

As a result, Plaintiff and the Class members have conferred a benefit on Defendant.  Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred.  Defendant will be unjustly enriched should it be allowed to retain such funds.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

115621615v1

## ANSWER NO. 56

MidAmerica denies the allegations in paragraph 56.

## FOURTH CAUSE OF ACTION

### (For Money Had and Received)

## COMPLAINT NO. 57

The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

## ANSWER NO. 57

MidAmerica's answers to paragraphs 1 through 56 are re-alleged and incorporated by reference.

## COMPLAINT NO. 58

Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

## ANSWER NO. 58

MidAmerica denies the allegations in paragraph 58.

## COMPLAINT NO. 59

As a result, Defendant has in its possession money which in equity belongs to Plaintiff and the Class members which should be refunded to Plaintiff and the Class members.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## ANSWER NO. 59

MidAmerica denies the allegations in paragraph 59.

## FIFTH CAUSE OF ACTION

### (Negligence)

## COMPLAINT NO. 60

The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

22

### ANSWER NO. 60

MidAmerica's answers to paragraphs 1 through 59 are re-alleged and incorporated by reference.

### COMPLAINT NO. 61

As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. Defendant had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment though its own wrongful acts. Specifically, Defendant owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there were sufficient funds in the account.

### ANSWER NO. 61

In answering paragraph 61, MidAmerica admits that a legal duty to use due care is an element of a negligence claim. MidAmerica denies the remaining allegations in paragraph 61.

### COMPLAINT NO. 62

Defendant breached this duty by unreasonably mishandling the accounts of Plaintiff and the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been charged.

### ANSWER NO. 62

MidAmerica denies the allegations in paragraph 62.

### COMPLAINT NO. 63

As a proximate result of Defendant's negligence, Plaintiff and each class member has been damaged in an amount to be proven at trial. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

### ANSWER NO. 63

MidAmerica denies the allegations in paragraph 63.

115621615v1

## SIXTH CAUSE OF ACTION

### (Violation of Electronic Funds Transfer Act)

### COMPLAINT NO. 64

The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

### ANSWER NO. 64

MidAmerica's answers to paragraphs 1 through 63 are re-alleged and incorporated by reference.

### COMPLAINT NO. 65

Because of Defendant's misrepresentations and material omissions as to the operation of the overdraft program, any consent that Defendant obtained for class members' participation in the program was fraudulently induced.

### ANSWER NO. 65

MidAmerica denies the allegations in paragraph 65.

### COMPLAINT NO. 66

Because consent to participation was fraudulently induced, Defendant failed to comply with 12 C.F.R. § 1005.17 which requires affirmative consent.

### ANSWER NO. 66

MidAmerica denies the allegations in paragraph 66.

### COMPLAINT NO. 67

Because of Defendant's failure to comply with 12 C.F.R. § 1005.7 it is liable for actual and statutory damages, as well as attorney fees and costs of suit pursuant to 12 U.S.C. § 1693m.

### ANSWER NO. 67

MidAmerica denies the allegations in paragraph 67.

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

1.      Plaintiff and the putative class members are not entitled to recover under the causes of action asserted because the Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

2.      Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

## THIRD AFFIRMATIVE DEFENSE

(Standing)

3.      Plaintiff's claims are barred, in whole or in part, because she lacks standing to assert claims in her own behalf or on behalf of putative class members.

## FOURTH AFFIRMATIVE DEFENSE

(Waiver)

4.      Plaintiff and putative class members are barred from obtaining any relief because they knowingly and voluntarily waived the rights Plaintiff now attempts to assert.

## FIFTH AFFIRMATIVE DEFENSE

(Laches)

5.      Plaintiff and putative class members are barred from obtaining any relief by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (Estoppel)

6.      Plaintiff and putative class members' recovery is limited or barred by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

7.      Plaintiff and putative class members' claims are barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

8.      Plaintiff and putative class members' recovery is limited or barred due to their failure to mitigate their damages, if any.

## NINTH AFFIRMATIVE DEFENSE

### (Preemption)

9.      Plaintiff and putative class members' claims are preempted, in whole or in part, by federal law.

## TENTH AFFIRMATIVE DEFENSE

### (Safe Harbor)

10.      Plaintiff and putative class members' claims are barred, in whole or in part, because MidAmerica complied with all applicable laws and regulations.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

11.      Plaintiff's request for injunctive relief on behalf of herself and putative class members is barred because there is an adequate legal remedy for the claims asserted.

115621615v1

## TWELFTH AFFIRMATIVE DEFENSE

### (Failure to Give Required Notice)

12.     Plaintiff and putative class members are not entitled to recover because they failed to properly provide notice required by law.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

13.     The Complaint's fifth cause of action for negligence is barred because Plaintiff and putative class members assumed the risk of the injury alleged.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Comparative Negligence)

14.     Plaintiff and putative class members' recovery on the Complaint's fifth cause of action for negligence is limited or barred by the doctrine of comparative negligence.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Setoff)

15.     Plaintiff and putative class members' recovery is limited or barred because they owe MidAmerica money.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Acquiescence)

16.     Plaintiff and putative class members' claims are barred, in whole or in part, because they acquiesced in the conduct complained of.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

17.     Plaintiff and putative class members' claims are barred, in whole or in part, because they have been unjustly enriched.

## EIGHTEENTH AFFIRMATIVE DEFENSE

(Voluntary Payment)

18.     Plaintiff and putative class members' claims are barred, in whole or in part, under the voluntary payment doctrine.

## NINETEENTH AFFIRMATIVE DEFENSE

(Reasonable Commercial Standards)

19.     Plaintiff's claims are barred, in whole or in part, because MidAmerica acted in accordance with reasonable commercial standards.

## TWENTIETH AFFIRMATIVE DEFENSE

(Course of Dealing)

20.     Plaintiff and putative class members are barred from challenging MidAmerica's interpretation, application, and implementation of the terms and provisions of the contracts governing their accounts (including whether MidAmerica's interpretation, application, and implementation were in accordance with any obligation of good faith and fair dealing) because Plaintiff and putative class members acquiesced in MidAmerica's interpretation, application, and implementation of the contractual terms and provisions as a course of dealing, and benefited from MidAmerica's interpretation, application, and implementation of the contractual terms and provisions.

## RESERVATION OF RIGHTS

MidAmerica expressly reserves its right to amend this Answer or allege additional affirmative defenses after conducting further discovery, investigation and research.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, MidAmerica respectfully requests that:

1.      Plaintiff have and recover nothing;

2.      Any request for class certification be denied;

3.      Judgment be entered in favor of MidAmerica and against Plaintiff;

4.      MidAmerica be awarded its costs and reasonable attorneys' fees as may be recoverable under claims asserted by Plaintiff; and

5.      The Court award all other relief that the Court deems just and proper.

Dated:  December 18, 2015                         Respectfully submitted,

By:  s/ Stuart M. Richter

Stuart M. Richter (*Pro Hac Vice*) LEAD COUNSEL
Andrew J. Demko (*Pro Hac Vice*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: (310) 788-4400

William J. Kraus (*Pro Hac Vice*)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200

*Attorneys for Defendant 1st MidAmerica Credit Union*

115621615v1