**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARTHA TOWNER, | ) |
|       Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:15-cv-01162-NJR-SCW |
| 1ST MIDAMERICA CREDIT UNION, and DOES 1-100, | ) ) ) ) |
|       Defendants. | ) ) |

**REPLY IN SUPPORT OF DEFENDANT 1ST MIDAMERICA CREDIT UNION'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff's opposition to 1st MidAmerica's motion for judgment on the pleadings centers on material misstatements of Illinois law, and relies extensively on inapposite cases from other jurisdictions. 1st MidAmerica files this reply to correct Plaintiff's misstatements.

All of Plaintiff's claims[1] are premised on an idiosyncratic interpretation of 1st MidAmerica's Membership Agreement and Opt-In Consent Form. According to Plaintiff, her interpretation of these unambiguous agreements creates ambiguity that prevents the Court from rendering judgment on the pleadings. Not so. As explained in more detail below, Plaintiff disregards the ample Illinois case law providing a framework for contract interpretation. Both the plain language of the Membership Agreement and Consent Form and Illinois' rules of contract interpretation (as well as applicable law) compel the same conclusion: 1st MidAmerica is permitted to charge overdraft fees based on a member's available balance.

Plaintiff further claims that 1st MidAmerica violated the Electronic Fund Transfer Act ("EFTA") by providing her with a supposedly misleading consent form. Plaintiff attempts to rely

---

[1]     Plaintiff fails to address, and therefore concedes, 1st MidAmerica's argument that there can be no cause of action for negligence in this matter. (*See* Motion at 20.)

1

on inapposite language from the Consumer Financial Protection Bureau ("CFPB"), taken out of context, to argue the illogical position that 1st MidAmerica failed to comply with the statute while using the model form required by the statute.[2]

Plaintiff is impermissibly attempting to recover for overdrafts that resulted solely from her actions. A Plaintiff "pleads [herself] out of court" when overdrafts are the result of her own errors, rather than the banks. *Gale v. Hyde Park Bank,* 384 F.3d 451, 452 (7th Cir. 2004) (Plaintiff failed to "keep on hand funds to cover all outstanding transactions" and "cannot shift responsibility to the Bank."). Accordingly, her Complaint should be dismissed with prejudice.

**I.    The Membership Agreement and Consent Form Permit Overdraft Fees To Be Calculated Based on Available Balance.**

There is no dispute that it has been 1st MidAmerica's practice to assess overdrafts based on a member's available balance. Plaintiff cannot and does not argue that this practice is improper. Instead, Plaintiff argues that 1st MidAmerica's contracts—the Membership Agreement and federally-mandated Consent Form—require that overdrafts must be based on a member's "ledger" balance, notwithstanding the fact that the terms "actual" or "ledger" balance do not appear in either document. To avoid dismissal, Plaintiff asserts that her (idiosyncratic) reading of the documents means that 1st MidAmerica's reading is not the "*only* reasonable one" and that the contracts are therefore ambiguous. (Opp. at 8.) She is wrong as a matter of law.[3]

Assuming Plaintiff's erroneous interpretation is "competing" (and it is not), if there are competing interpretations, courts apply Illinois' rules of contract construction to determine the

---

[2]    As if there were any doubt, the EFTA provides a safe harbor for financial institutions that use the Federal Reserve's model form, like 1st MidAmerica did here.  15 U.S.C. § 1693m(d); *Feinman v. Bank of Delaware*, 728 F. Supp. 1105, 1113 (D. Del.), aff'd, 909 F.2d 1475 (3d Cir. 1990).

[3]    Indeed, if the law permitted Plaintiff to create ambiguity simply by espousing an alternative interpretation of contract language, every contract term would be susceptible to ambiguity. *See Indiana Ins. Co. v. Hydra Corp.,* 615 N.E.2d 70, 72 (2d Dist. 1993) (affirming judgment on the pleadings in contract dispute).

intent of the parties. *See Moore v. Lomas Mortg. USA*, 796 F.Supp. 300, 303 (N.D. Ill. 1992) ("If . . . the Court determines that the contract is ambiguous, the Court may employ rules of construction to determine the parties' intention.") Thus, ambiguous contracts are construed by the courts, and a jury question is presented *only when application of the rules of construction fails to resolve the ambiguity*.

      Here, Illinois' rules of interpretation confirm that the plain language of the Membership Agreement and Consent Form permit 1st MidAmerica to calculate and charge overdraft fees based on available balance. A contract must be construed to reconcile potentially conflicting provisions. *Moore,* 796 F.Supp. at 305 ("[A]n interpretation which gives reasonable meaning to all [of a contract's] terms is preferred to an interpretation which leaves some terms to no effect."). Plaintiff's "ledger" balance interpretation is impermissible because it would eviscerate other provisions of the Membership Agreement, namely the Funds Availability Policy.

      Plaintiff claims the contract may be compartmentalized where the Funds Availability provision could utilize a member's available balance, while overdraft fees would be charged based on a member's ledger balance. But this makes no sense. For members who have opted into overdraft protection for nonrecurring debit card transactions, like Plaintiff, the *only function* of the Funds Availability Policy is to determine when, and by how much, a member overdrafted his or her account. For instance, pursuant to the Funds Availability Policy, if Plaintiff deposited a check for $200, those funds would not be "available" for use until the next business day. If Plaintiff had opted into overdraft services, she could withdraw $200 on the day of deposit, but she would have overdrawn her account and would be charged an overdraft fee. If Plaintiff had not opted into overdraft services, her transaction would be declined. Because the two parts of the Member Agreement work hand-in-hand, there is no logical way to separate them.

Moreover, there is no rule of contract interpretation that would permit Plaintiff's disjointed construction. *See Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 902 N.E.2d 1178, 1190 (1st Dist. 2009). It is a bedrock principle of contract interpretation that constituent parts of an agreement are to be read in concert with one another and not so that one portion obviates or undermines another. Plaintiff's approach violates this canon and therefore should be rejected.

## II. Plaintiff Cannot Avoid Dismissal By Relying on Inapposite, Non-Precedential Cases.

Despite the clear result produced by the plain contractual language and Illinois' rules of contract interpretation, Plaintiff invokes non-precedential (and inapposite) cases to argue that her complaint should survive. For instance, in *In re TD Bank, N.A.*, No. CV 6:15-MN-2613-BHH, 2015 WL 8493979 (D.S.C. Dec. 10, 2015) the account agreement at issue used the contradicting terms "negative balance" and "negative available balance" interchangeably. *Id.* at *15. The court determined that this critical inconsistency, *not present here*, created a material issue of fact that precluded dismissal before discovery. Notably, however, the *TD Bank* court found that the plaintiff had distorted many clauses of the contract while ignoring other relevant clauses, just as Plaintiff has done here, and accordingly dismissed certain claims that were contradicted by the actual contract. *See id.* at *21–22.

Plaintiff also cites a recent decision by a Nevada federal court, *Gunter v. United Fed. Credit Union*, No. 3:15-cv-483, 2016 WL 3457009 (D. Nev. June 22, 2016), claiming that the court in that case "examined an Opt-In Agreement with identical language" and denied the defendant's motion to dismiss. However, in *Gunter*, the court's opinion analyzed the member agreement, rather than the opt-in agreement. *Id.* at *3. It is readily apparent from the opinion that, as in *TD Bank*, the member agreement language is materially different than the language

4

here, where 1st MidAmerica's Agreement uniformly refers to a member's *available* balance.[4]

Further, on July 13, 2016, Plaintiff submitted an opinion from a state court in California, *Hernandez v. Point Loma Credit Union*, as purported new authority in support of her opposition. (ECF No. 48.) *Hernandez* relies on California state law which employs a fundamentally different standard for analyzing ambiguous contracts at the pleadings stage, requiring only that the plaintiff's interpretation not be "clearly erroneous." Here, by contrast, it must be *plausible* after applying Illinois' cannons of construction, and it is not even close. Accordingly, *Hernandez* does not control, or even inform, this Court's decision on the instant motion.

### III. Plaintiff's Regulation E Claim Fails Because, the Opt-In Form Properly Provided Notice of 1st MidAmerica's Overdraft Policy.

Plaintiff selectively quotes language from two CFPB publications, asserting that the model opt-in form contemplates overdraft fees based on the use of actual or ledger balance, rather than available balance. Plaintiff claims incorrectly that the CFPB, in its official interpretation of Regulation E, equates "insufficient funds" with "ledger balance." (*See* Opp. at 9-10). In fact, the CFPB publication addresses *when a financial institution does not provide an opt-in notice*, a situation that is readily distinguishable from the present case. Plaintiff's reliance on the agency's winter 2015 Supervisory Highlights fares no better. Read in its full context, that publication cautions that an institution may not *switch* from one balance method to another without properly notifying its members. That is a far cry from Plaintiff's assertion that the CFPB supports or mandates the use of her ledger-balance theory. (*See* Opp. at 9-10).

### IV. CONCLUSION

For the reasons stated herein and in 1st MidAmerica's prior memorandum, 1st MidAmerica respectfully requests the Complaint be dismissed without leave to amend.

---

[4] *See, e.g.*, Memorandum in Support of 1st MidAmerica's Motion for Judgment on the Pleadings, p. 3 n.2.

Dated: July 14, 2016 Respectfully submitted,

/s/ Stuart M. Richter
Stuart M. Richter, *pro hac vice*
Andrew J. Demko, *pro hac vice*
Charles A. DeVore, *pro hac vice*
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, California 90067-3012
Telephone: (310) 788-4400
*Counsel for Defendant 1st MidAmerica Credit Union*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 14, 2016, a copy of the foregoing ***Reply in Support of Defendant 1st MidAmerica Credit Union's Motion for Judgment on the Pleadings*** was filed via the court's CM/ECF system, which will send electronic notice to all counsel of record who have appeared in this case.

                                                                     /s/ Stuart M. Richter